SM

WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Daniel CV Aguilar, | No.   CV-22-08186-PCT-JAT (MTM) |
| Plaintiff, |  |
| v. | **ORDER** |
| David Rhodes, et al., |  |
| Defendants. |  |

Plaintiff Daniel CV Aguilar, who is currently confined in the Arizona State Prison Complex (ASPC)-Yuma, La Paz Unit in San Luis, Arizona, brought this pro se civil rights case pursuant to 42 U.S.C. § 1983.  (Doc. 42.)  Defendants move for summary judgment, and Plaintiff opposes the Motion for Summary Judgment.[1]  (Docs. 47, 66.)

## I.    Background

In his one-count Second Amended Complaint, Plaintiff sues Yavapai County Sheriff David Rhodes and Lieutenant Smith.  (Doc. 42 at 2.)  Plaintiff asserts a Sixth Amendment claim for denial of his right to counsel.  (*Id.* at 3.)  Plaintiff alleges that on August 3, 2021, he was arrested and taken to the Yavapai County Detention Center (YCDC).  (*Id.*)  Upon his arrival, Plaintiff made numerous requests to call an attorney but was denied each time.  (*Id.*)  Jail staff told Plaintiff that he did not need an attorney for his initial appearance, although the law states Plaintiff has a right to an attorney from initial appearance through

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Doc. 50.)

sentencing.  (*Id.*) Plaintiff asked to speak with Defendant Smith, who did not allow Plaintiff to call an attorney.  (*Id.*)  Defendant Smith told Plaintiff that Defendant Rhodes had issued a directive that intake detainees cannot call a lawyer because such a call was considered a courtesy call.  (*Id.*)  Plaintiff asked to submit a grievance but was "denied," and his request to speak with a supervisor was also denied.  (*Id.*)  Plaintiff was unable to contact an attorney or his employer for two days.  (*Id.*)  Plaintiff seeks compensatory and injunctive relief.  (*Id.* at 6.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a Sixth Amendment claim against Defendants Rhodes and Ambrose based on his allegation that he was denied access to counsel for two days after he was booked into jail.  (Doc. 41.) The Court directed Defendants Rhodes and Smith to answer.  (*Id.*)

Defendant Rhodes now moves for summary judgment and argues that Plaintiff failed to exhaust the available administrative remedies prior to filing this lawsuit and that Plaintiff's claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Doc. 47.)  Defendant Smith joins the Motion for Summary Judgment.  (Doc. 74.)[2]

## II.    Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying

---

[2] Plaintiff objects to Defendant Smith joining the Motion for Summary Judgment because "allow[ing] Defendants to add Lt. Smith's merits at this juncture of the proceedings would be very prejudicial toward the Plaintiff." (Doc. 78.) Defendant Smith has joined Defendant Rhodes' arguments concerning exhaustion and *Heck*; he has not moved for summary judgment as to the merits of the Sixth Amendment claim. (*See* Doc. 74.)  The Court has extended the deadline for filing dispositive motions on the merits of Plaintiff's claim to 45 days following the Court's ruling on the instant motion.  (Doc. 77.) Defendant Smith's joinder does not present any new evidence or arguments that Plaintiff has not already had an opportunity to fully respond to, and Plaintiff has not otherwise shown how allowing Defendant Smith to join in the pending summary judgment motion will prejudice him.  Accordingly, Plaintiff's objection to Defendant Smith's joinder is overruled.

those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.   Exhaustion

### A.   Legal Standard

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523

1   (2002), regardless of the type of relief offered through the administrative process, *Booth v.*
2   *Churner*, 532 U.S. 731, 741 (2001).

3        The defendant bears the initial burden to show that there was an available
4   administrative remedy and that the prisoner did not exhaust it.  *Albino v. Baca*, 747 F.3d
5   1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must
6   demonstrate that applicable relief remained available in the grievance process).  Once that
7   showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in
8   fact, exhausted administrative remedies or "come forward with evidence showing that there
9   is something in his particular case that made the existing and generally available
10  administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  The
11  ultimate burden, however, rests with the defendant.  *Id.*  Summary judgment is appropriate
12  if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a
13  failure to exhaust.  *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

14       If summary judgment is denied, disputed factual questions relevant to exhaustion
15  should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of
16  exhaustion.  *Albino*, 747 F.3d at 1170-71.  But if a court finds that the prisoner exhausted
17  administrative remedies, that administrative remedies were not available, or that the failure
18  to exhaust administrative remedies should be excused, the case proceeds to the merits.  *Id.*
19  at 1171.

20       **B.     Relevant Facts**[3]

21            **1.     YCDC Administrative Grievance Procedure**

22       Yavapai County Sheriff's Office Captain Richard Martin avers that the YCDC has
23  a five-step grievance process for exhausting an inmate's administrative remedies.  (Doc.
24  48-1 at 31–33, Martin Decl. ¶¶ 9–21.)  First, before submitting a grievance, inmates must
25  submit an inmate request form to attempt to resolve their issue informally.  (*Id.* ¶ 12.)  Upon

---

27  [3] The facts are taken from Defendant Rhodes' Statement of Facts in support of the
    Motion for Summary Judgment, cited as Doc. 48, DSOF; Plaintiff's separate Statement of
28  Facts, in opposition to the Motion for Summary Judgment, cited as Doc. 67, PSOF;
    Plaintiff's controverting Statement of Facts, cited as Doc. 68, PCSOF; and Plaintiff's
    Declaration, cited as Doc. 69, Pl. Decl.

submission, the form is automatically sent to the appropriate staff member.  (*Id.*)  Once answered, the form is sent back to the inmate for review and acceptance.  (*Id.*)  At that point, the inmate can: (1) accept the response; (2) accept the response with objections; or (3) do nothing.  (*Id.* ¶ 13.)  If the inmate does nothing, the request is processed as a passive acceptance after ten days.  (*Id.*)

At the second step of the grievance process, if the inmate is unsatisfied with the response to the Inmate Request, the inmate may submit an inmate grievance form.  (*Id.* ¶ 14.)  Grievance forms must be submitted within 48 hours of the incident being grieved.  (*Id.*)  Upon submission, the form is directed to the appropriate staff member.  (*Id.*)  The grievances at this step are responded to by a detention officer.  (*Id.*)  Once answered, the form is sent back to the inmate.  (*Id.* ¶ 15.)  At that point, the inmate can: (1) accept the response; (2) appeal the response to the next level; or (3) do nothing.  (*Id.*)  If the inmate does nothing, the grievance is processed as a passive acceptance after ten days.  (*Id.*)  If the response is accepted or passively accepted, the grievance is closed.  (*Id.*)

At the third step, if the inmate is unsatisfied with the results of the grievance decision, the inmate may submit a first-level appeal.  (*Id.* ¶ 16.)  If appealed, the appeal is sent to the appropriate supervisory level staff member for response.  (*Id.*)  These grievances are answered by a detention sergeant.  (*Id.*)  Once answered, the appeal is sent back to the inmate.  (*Id.* ¶ 17.)  At that point, the inmate can: (1) accept the response; (2) appeal the response to the next level; or (3) do nothing.  (*Id.*)  If the inmate does nothing, the form is processed as a passive acceptance after ten days.  (*Id.*)  If accepted or passively accepted, the appeal is automatically closed.  (*Id.*)

At the fourth step, if the inmate is unsatisfied with the results of the first appeal, the inmate may submit a second-level appeal.  (*Id.* ¶ 18.)  If appealed, the second-level appeal is sent to the appropriate administrative level staff member for response.  (*Id.*)  These second-level appeals are answered by a lieutenant.  (*Id.*)  Once answered, the appeal is sent back to the inmate.  (*Id.* ¶ 19.)  At that point, the inmate can: (1) accept the response; (2) appeal the response to the next level; or (3) do nothing.  (*Id.*)  If the inmate does nothing,

the form is processed as a passive acceptance after ten days.  (*Id.*)  If accepted or passively accepted, the appeal is automatically closed.  (*Id.*)

Finally, if the inmate is unsatisfied with the results of the second-level appeal, the inmate may submit a final-level appeal to the Detention Division Commander or his designee, usually the Jail Captain.  (*Id.* ¶ 20.)  After the Detention Division Commander or his designee issues a decision, the appeal is sent back to the inmate, and the grievance process is exhausted.  (*Id.* ¶ 21.)

Inmates at the YCDC are given access to an electronic kiosk that allows them to, among other things, review the Inmate Handbook, fill-out grievance forms, communicate requests to jail staff and perform legal research.  (Doc. 48, DSOF ¶ 5.)  Upon admission into YCDC, inmates are told to review the Inmate Handbook, which is available in electronic form on the kiosk machines.  (*Id.* ¶ 6.)  The Inmate Handbook provides the following information regarding the grievance process:

> 1. **Inmate Request Form**- -to ensure an effective way of communicating with the staff and administration, Inmate Request forms are available to you.  Request forms are available through the Securus kiosk.  All request forms are automatically forwarded to the appropriate staff member.  This form needs to be used if you are requesting any services, including legal and medical.  They are also the first required step of the grievance process.  Prior to submission of a grievance form, you must have first attempted to resolve your compliant [sic] via the appropriate Inmate Request Form.
>
> . . . .
>
> 20. **Inmate Grievance Procedure**- All inmates shall be allowed the opportunity to seek the resolution of grievable complaints through the grievance process.  NOTE: You may not use the grievance process to complain for or on behalf of another inmate.  You must file an Inmate Request Form to attempt resolution of your complaints prior to filing a Grievance Form.  Inmate Grievance Forms are available on the Securus kiosk.  To file a grievance, state the time, date, name of staff member(s) or inmates(s) involved, and pertinent details of the incident including the names of any witnesses.  Grievances must be submitted within 48 hours of occurrence

of the incident/problem you are grieving. Grievances are promptly and thoroughly investigated, appropriate corrective action taken, and a report issued back to the inmate. This process will be accomplished at the lowest level possible, beginning with an Officer through the Grievance Hearing Officer. If you are not satisfied you may appeal in writing through the chain of command to the Detention Division Commander.

(Doc. 48-1 at 36, 44.)

## 2. Plaintiff's Grievance History and Detention at YCDC

Plaintiff was detained at the YCDC for eight days from August 3, 2021 until August 11, 2021. (Doc. 48, DSOF ¶¶ 1, 3.) Plaintiff asserts that the only "instruction" he received upon admission to YCDC was the "Acknowledgement of Receipt of PREA[4] Brochure." (Doc. 67, PSOF ¶ 4; Doc. 68, PCSOF ¶ 2.) But during his deposition, Plaintiff testified that he was aware that he was required to file a grievance regarding the allegations in the Second Amended Complaint, but he did not file a grievance. (Doc. 48-1 at 13–14, Pl. Dep. at 140:18–20, 141:1–4.)

Plaintiff avers that, on August 4, 2021, he was placed into mandatory 10-day COVID quarantine, and inmates housed in quarantine cells at YCDC get "30 minutes out of there [sic] cell[s] to shower and obtain the chemicals provided by the on[-]duty officer so that their cell[s] m[a]y be sanitize[d] due to the COVID outbreak. [I]if the kiosk is operative and you have any time left[,] you may try to access the kiosk." (Doc. 68, PCSOF ¶¶ 1, 3; Doc. 67, PSOF ¶¶ 2–3; Doc. 69, Pl. Decl. ¶ 16–17.) Plaintiff asserts that, "under those extrem[e] circumstances[,] having the opportunity, or luxury to review a[n] Inmate Handbook [was] unrealistic." (Doc. 68, PCSOF ¶ 3; Doc. 67, PSOF ¶ 3.)

On August 6, 2021, Plaintiff filed an Inmate Request for Health Services in the jail kiosk system that was unrelated to his claim in this action; specifically, Plaintiff requested to bond himself out of jail. (Doc. 48, DSOF ¶ 39; Doc. 48-1 at 51.) A "Disposition" was issued that same day stating that, "This is not a medical dept. issue." (Doc. 48-1 at 51.)

---

[4] PREA refers to the Prison Rape Elimination Act.

1    The request was documented as "passively accepted" on August 10, 2021.  (*Id.* at 52.)
2    Plaintiff asserts that, "[d]ue to lack of the Plaintiff's familiarity of the kiosk machine . . .
3    and strict time restraint of 30 minutes the Plaintiff [incorrectly] submitted his request to
4    [the] medical department."  (Doc. 69, Pl. Decl. ¶¶ 21, 23.)

5            On August 8, 2021, Plaintiff was moved to the infirmary due to a medical
6    emergency after he fell and hit his head.  (Doc. 69, Pl. Decl. ¶ 18.)  He was moved back to
7    the COVID quarantine unit on August 10, 2021.  (*Id.* ¶ 20.)  Plaintiff was released from
8    YCDC the following day.  (*Id* ¶ 21.)

9            Plaintiff asserts that there was an administrative grievance available at the YCDC,
10   but he did not submit an administrative grievance or appeal an administrative grievance to
11   the highest level while he was confined at the YCDC because "[t]hey refused to give [him]
12   a grievance and [he] was not allowed [to have] a tablet in quarantine."  (Doc. 42 at 3.)
13   Plaintiff states that his 8-day detention at YCDC did not allow him sufficient time to
14   complete the grievance process before he was released from YCDC custody.  (Doc. 68,
15   PCSOF ¶¶ 4–34, 36, 38–39.)

16           **C.    Discussion**

17           Defendants have met their initial burden of showing that there was an administrative
18   remedy at YCDC during Plaintiff's detention and that Plaintiff did not complete the
19   grievance process with respect to his Sixth Amendment claim against Defendants.  The
20   burden therefore shifts to Plaintiff to show that he either exhausted the available remedy or
21   that the process was effectively unavailable to him.  In his Response, Plaintiff argues that
22   because he was only detained at YCDC for eight days, "it would be unrealistic to believe
23   that 'exhausting administrative remedies' would be possible."  (Doc. 66 at 4.)  He also
24   seems to contend that he did not have access to the YCDC kiosk system while he was
25   housed in the quarantine unit.  (Doc. 68, PCSOF ¶¶ 1, 3; Doc. 67, PSOF ¶¶ 2–3; Doc. 69,
26   Pl. Decl. ¶ 16−17.)

27           The undisputed facts show that Plaintiff was placed into the quarantine unit on
28   August 4, 2021, and he subsequently filed an Inmate Request unrelated to his Sixth

Amendment claim through the jail kiosk system on August 6, 2021, while he was still housed in quarantine.  (Doc. 48, DSOF ¶ 39; Doc. 48-1 at 51; Doc. 68, PCSOF ¶¶ 1, 3; Doc. 67, PSOF ¶¶ 2–3; Doc. 69, Pl. Decl. ¶ 16−17.)  Moreover, Plaintiff admitted that he knew he was required to file a grievance regarding his claim in the Second Amended Complaint. (Doc. 48-1 at 13–14, Pl. Dep. at 140:18–20, 141:1–4.)  Plaintiff also stated that during his confinement in quarantine, he was given 30 minutes outside of his cell each day to shower, obtain cleaning supplies, and access the kiosk system.  (Doc. 68, PCSOF ¶¶ 1, 3; Doc. 67, PSOF ¶¶ 2–3; Doc. 69, Pl. Decl. ¶ 16−17.)  Plaintiff does not specifically assert that at any point during his housing in quarantine, he tried to access to the kiosk system but was denied access by staff or that the kiosk was inoperative at the time he tried to use it. Instead, the record shows that Plaintiff used the kiosk system to file a grievance while he was housed in quarantine, but he failed to mention the events underlying his Sixth Amendment claim.  Additionally, when Plaintiff filed the unrelated August 6, 2021 Inmate Request, he received a prompt response from the jail just a few hours later.  Plaintiff has not presented any evidence that he attempted to continue pursuing this grievance or that he would not have been able to complete the grievance process before he was released if he had done so.  (Doc. 48-1 at 51.)  Likewise, Plaintiff has not shown that he attempted to grieve his Sixth Amendment claim in this action despite having access to the kiosk system on August 6, 2021, and he has not shown that had he grieved his Sixth Amendment claim that day, he would not have been able to complete the grievance process prior to being released on August 11, 2021, given the jail's quick response to his unrelated grievance.

On this record, Plaintiff has not rebutted Defendants' evidence that there was an administrative remedy available to Plaintiff and that Plaintiff failed to exhaust it prior to filing this lawsuit.  Accordingly, Defendants' Motion for Summary Judgment will be granted, and the Court will dismiss without prejudice Plaintiff's claim for failure to exhaust the available administrative remedy.  *See Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir.

2005) (if a court grants summary judgment on non-exhaustion grounds, dismissal is without prejudice).[5]

**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 47).

(2)   Defendants' Motion for Summary Judgment (Doc. 47) is **granted**, and the Second Amended Complaint is **dismissed without prejudice** for failure to exhaust the available administrative remedy.

(3)   The Clerk of Court must enter judgment accordingly.

Dated this 28th day of February, 2024.

James A. Teilborg
Senior United States District Judge

---

[5] The Court will not address Defendants' *Heck* argument.